# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs August 2, 2001

## J.D. HICKMAN v. TENNESSEE BOARD OF PAROLES

**Appeal from the Chancery Court for Davidson County**
**No. 00-1367-I     Irvin H. Kilcrease, Jr., Chancellor**

---

**No. M2000-02846-COA-R3-CV - Filed October 16, 2001**

---

This appeal involves a prisoner's efforts to obtain a mandatory parole date. After the general counsel for the Tennessee Board of Paroles informed him that he was ineligible for mandatory parole, the prisoner filed a common-law writ of certiorari in the Chancery Court for Davidson County seeking a declaration either that he is entitled to a mandatory parole date or that the Board had been employing the wrong legal standards with regard to his parole date and the parole dates of all other prisoners sentenced after 1989. In response to the Board's Tenn. R. Civ. P. 12.02(6) motion, the trial court dismissed the prisoner's petition because it was not timely filed and because the Tennessee Criminal Sentencing Reform Act of 1982 had prospectively repealed mandatory parole by implication. On this appeal, the prisoner asserts that his suit was timely filed and that the trial court erred by concluding that he was not entitled to a mandatory parole date. We have determined that the prisoner's complaint was timely; however, we have also determined that he is not entitled to a mandatory parole date.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

J.D. Hickman, Mountain City, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Stephanie R. Reevers, Senior Counsel (on appeal), for the appellee, Tennessee Board of Paroles.

## OPINION

### I.

Shortly after J.D. Hickman was admitted to the practice of law in Tennessee, he began to steal money entrusted to him by his clients. After committing this crime repeatedly over a four-year period, Mr. Hickman was arrested and charged with multiple counts of theft. He was tried first in Washington County on the charge of stealing more than $60,000 from the estate of Clarice Moore Peter, and on February 25, 1997, a jury found him guilty. After his motion to dismiss the remaining charges was denied, Mr. Hickman pleaded guilty to four remaining charges, one in Washington

County and three in Sullivan County.[1]  Mr. Hickman was disbarred from the practice of law and is currently serving an effective eleven-year sentence at the Northeast Correctional Center in Mountain City.

In December 1998, the Tennessee Board of Paroles declined to parole Mr. Hickman and set its next consideration of his case for December 2003.  Mr. Hickman thereafter filed suit in the United States District Court for the Middle District of Tennessee challenging the Board's refusal to parole him.  Thereafter, in January 2000, Mr. Hickman wrote a letter to the Board's general counsel seeking a declaration that he was entitled to mandatory parole under Tenn. Code Ann. § 40-28-117(b) (1997).  On February 8, 2000, the Board's general counsel responded that the "criminal sentence reform act of 1982 abolished mandatory parole for anyone sentenced after 7/1982."  Not to be deterred by this response, Mr. Hickman wrote a letter dated March 20, 2000 to the Board's chairman requesting a mandatory parole date or, in the alternative, a parole hearing before the Board.

The Board's chairman never responded to Mr. Hickman's March 20, 2000 letter.  Accordingly, on May 2, 2000, Mr. Hickman filed a petition for writ of certiorari in the Chancery Court for Davidson County seeking a declaration that he was entitled to a mandatory parole date or that the Board had been employing the wrong legal standards with regard to his parole date and the parole dates of all other prisoners sentenced after 1989.  After obtaining a continuance to file a response on behalf of the Board and its chairman, the Office of the Attorney General filed a motion to dismiss stating in the most general terms that Mr. Hickman's petition failed to state a claim upon which relief may be granted.  Regrettably, the motion failed to state precisely how Mr. Hickman's complaint failed to state a claim upon which relief may be granted, as required by Tenn. R. Civ. P. 7.02.[2]  We presume from Mr. Hickman's response and the trial court's memorandum and order that the Attorney General must have asserted that the petition was not timely filed and that Mr. Hickman was not entitled to mandatory parole as a matter of law.

The trial court filed a memorandum and order on October 25, 2000, dismissing Mr. Hickman's petition because it was untimely and because Mr. Hickman was not entitled to mandatory parole because he was sentenced after July 1, 1982.  On this appeal, Mr. Hickman complains that

---

[1]The Tennessee Court of Criminal Appeals later affirmed the four convictions stemming from Mr. Hickman's guilty pleas.  *State v. Hickman*, No. 03C01-9710-CR-00483, 1999 WL 39504 (Tenn. Ct. App. Jan. 21, 1999), *perm. app. denied* (Tenn. June 14, 1999).  We find no indication that Mr. Hickman ever appealed from his initial conviction involving the theft from the Peter estate. The Tennessee Court of Criminal Appeals has also affirmed the dismissal of Mr. Hickman's petition for post-conviction relief and has dismissed his appeal from the denial of his motion to correct the judgment forms.  *Hickman v. State*, Nos. E1999-02756-CCA-R3-PC & E2000-00626-CCA-R3-PC, 2000 WL 33157229 (Tenn. Ct. App. Sept. 27, 2000) (No Tenn. R. App. P. 11 application filed).

[2]Tenn. R. Civ. P. 7.02(1) requires that motions must "state with particularity the grounds therefor."  We surmise that the Office of the Attorney General may have articulated a specific reason or reasons why Mr. Hickman's petition failed to state a claim upon which relief may be granted in a memorandum of law accompanying its motion.  However, this memorandum, by operation of Tenn. R. App. P. 24(a), is not a part of the appellate record.  Suffice it to say that articulating a defense in a memorandum accompanying a motion does not amount to compliance with Tenn. R. Civ. P. 7.02(1).  *Pendleton v. Mills*, No. M2000-03097-COA-R3-CV, 2000 WL 1089503, at *2, n.7 (Tenn. Ct. App. Sept. 18, 2001); *Robinson v. Clement*, No. M2001-00365-COA-R3-CV, 2001 WL 965092, at *2 (Tenn. Ct. App. Aug. 27, 2001) (Tenn. R. App. P. 11 application filed).

the trial court erred by granting the Office of the Attorney General additional time to file its responsive pleadings. He also insists that his complaint was timely and that the trial court erred by concluding that he was not eligible for a mandatory parole date.

## II.
## The Extension of Time For the Attorney General's Responsive Pleadings

Mr. Hickman asserts that the trial court erred by granting the Attorney General an extension of time to respond to his petition. Because the Attorney General's motion was filed after the expiration of the time for filing a responsive pleading provided by Tenn. R. Civ. P. 12.01, Mr. Hickman argues that the Attorney General was required to demonstrate that his failure to request a timely extension of time was brought about by excusable neglect.[3] He also argues that the Attorney General's excuse that he required "additional time . . . to conduct an investigation and prepare responsive pleadings for submission" does not constitute excusable neglect.

We are constrained to agree with one point made by Mr. Hickman. The Attorney General's motion does little to explain why he or one of his assistants needed forty-seven days, rather than thirty days, to seek additional time to respond to Mr. Hickman's petition. Indeed, we suspect that no such plausible explanation was offered because none was available. Excusable neglect must be proved, not merely alleged. Accordingly, a motion seeking an enlargement of time filed after the applicable deadline has expired should be accompanied by an affidavit stating the circumstances that prevented the moving party from acting within the required time.

The concept of excusable neglect is not inflexible. For the purpose of Tenn. R. Civ. P. 6.02, determining whether a failure to act within a required time should be excused is a function of the length of time that has passed since the deadline and the possible harm to the opposing party brought about by the failure to act within the deadline. *Wagner v. Frazier*, 712 S.W.2d 109, 113 (Tenn. Ct. App. 1986). In this case, the Attorney General's motion was seventeen days late, and Mr. Hickman has not demonstrated that he has been prejudiced in any way by the Attorney General's failure to seek an extension of time to answer his petition within thirty days after he filed it.

The Attorney General's motion for an extension of time was late and was not supported by even a colorable explanation for the inability to file the motion on or before June 1, 2000. Despite this seeming nonchalance regarding the requirements of the rules, we decline to hold that the trial court abused its discretion by granting the Attorney General thirty additional days to file a responsive pleading. In accordance with Tenn. R. App. P. 36(b), we decline to grant relief on appeal unless, considering the record as a whole, the alleged error (1) involved a substantial right, (2) more probably than not affected the judgment, or (3) resulted in prejudice to the judicial process. In the absence of any substantive or procedural prejudice to Mr. Hickman, none of these circumstances exist.

---

[3]Tenn. R. Civ. P. 6.02 provides, in pertinent part: "When by . . . these rules . . . an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion . . . upon motion made after the expiration of the specified period permit the act to be done, where the failure to act was the result of excusable neglect . . .."

## III.
## The Timeliness of Mr. Hickman's Complaint

Both the Attorney General and the trial court appear to have construed Mr. Hickman's petition as a challenge to the Board's December 2, 1998 decision not to release him on parole. While Mr. Hickman's petition is surprisingly unclear for a paper prepared by a law school graduate, it can be fairly read to be aimed at the Board's refusal to respond to his demand for a mandatory parole date. Mr. Hickman made his last request for a mandatory parole date in his letter to the Board's chairman dated March 20, 2000. Mr. Hickman asserts that the Board's chairman never responded to his letter and that the Board's chairman customarily declines to respond to similar letters solely for the purpose of evading judicial review of the Board's decisions.

Tenn. Code Ann. § 27-9-102 (2000) requires that petitions for both common-law and statutory writs of certiorari be filed within sixty (60) days from the entry of the order or judgment for which review is sought. The purpose of this provision is to promote the timely resolution of disputes by establishing filing deadlines that will keep cases moving through the system. *Levy v. Board of Zoning Appeals*, No. M1999-00126-COA-R3-CV, 2001 WL 1141351, at *4-5 (Tenn. Ct. App. Sept. 27, 2001); *State ex rel. Sizemore v. United Physicians Risk Retention Group*, ___ S.W.3d ___, ___, 2001 WL 360698, at *6 (Tenn. Ct. App. 2001) (discussing the purpose of deadlines generally). Tenn. Code Ann. § 27-9-102's deadline has been analogized to the deadline for filing a notice of appeal under Tenn. R. App. P. 4(a). *Thandiwe v. Traughber,* 909 S.W.2d 802, 804 (Tenn. Ct. App. 1994). Accordingly, like a notice of appeal, failure to file a petition for common-law writ of certiorari within the time required by Tenn. Code Ann. § 27-9-102 causes the party filing the petition to forfeit its right to seek judicial review and requires the courts to decline to exercise their jurisdiction to grant the writ because the petition is time-barred. *A'la v. Tennessee Dep't of Corr.,* 914 S.W.2d 914, 916 (Tenn. Ct. App. 1995) (holding that a petition filed longer than sixty days after a final order is not timely filed); *Brannon v. County of Shelby,* 900 S.W.2d 30, 34 (Tenn. Ct. App. 1994) (holding that a petition not filed within sixty days is time-barred).

The courts should be hesitant to permit state agencies and officials to use silence as a means to shield their actions from judicial review. In other contexts not applicable here,[4] the Tennessee General Assembly has recognized that administrative agencies should not be permitted to hide

---

[4] In other contexts, Mr. Hickman's letter to the Board's chairman could reasonably be construed as a petition for declaratory order in accordance with Tenn. Code Ann. § 4-5-223 (1998) which could provide the necessary predicate for a petition for declaratory judgment under Tenn. Code Ann. § 4-5-225 (1998). However, Tenn. Code Ann. § 4-5-106(c) (2000) explicitly excludes the Board from the provisions of Tenn. Code Ann. §§ 4-5-223, -225. *Hamilton v. Traughber*, No. 01A01-9409-CH-00441, 1995 WL 217187, at *1 (Tenn. Ct. App. Apr. 13, 1995), *perm. app. denied* (Tenn. July 3, 1995). Accordingly, despite contrary dicta in other decisions, *e.g., Hodges v. Lewis*, No. M2000-02309-COA-R3-CV, 2001 WL 799748, at *2 (Tenn. Ct. App. July 17, 2001) (No Tenn. R. App. P. 11 application filed), it would be inappropriate to construe Mr. Hickman's petition as a petition for a declaratory judgment to which Tenn. Code Ann. § 27-9-102's sixty-day deadline would not apply. The only procedure for a prisoner to obtain judicial review of an action or decision of the Board is by a petition for common-law writ of certiorari. *Partee v. State*, No. 02C01-9311-CC-00267, 1995 WL 381649, at *1 (Tenn. Crim. App. June 28, 1995) (No Tenn. R. App. P. 11 application filed).

behind a wall of silence.[5]  Accordingly, we will treat the chairman's refusal to respond to Mr. Hickman's March 20, 2000 letter as a denial of his request for a mandatory parole date.[6]  It necessarily follows that the Board could only have denied Mr. Hickman's request for mandatory parole after it received his letter.

Mr. Hickman's May 2, 2000 petition was filed within sixty days following his March 20, 2000 letter.  Enough time had elapsed to appropriately presume that the Board had decided not to respond to Mr. Hickman's letter.  Rather than being characterized as "no action," the chairman's failure to respond to Mr. Hickman's letter is more properly reviewed as tantamount to a denial of his request.  Because the chairman's decision must have been made at some point after March 20, 2000, we find that Mr. Hickman's petition was filed within the time permitted by Tenn. Code Ann. § 27-9-102.  Accordingly, the trial court erred by concluding that Mr. Hickman's petition was untimely.

## IV.
### Mr. Hickman's Entitlement to Mandatory Parole

Mr. Hickman is not the first prisoner committing a crime after July 1, 1982 who has asserted that he is eligible for mandatory parole under Tenn. Code Ann. § 40-28-117(b).  We have addressed this issue on at least three occasions.  Because our dispositions took the form of memorandum opinions pursuant to Tenn. Ct. App. R. 10(b), neither the parties nor this court may cite or rely on them unless they relate to the claims involved in this case.  Because none of the earlier decisions involved Mr. Hickman, we decline to rely on them as authority, even though their reasoning is sound.

The concept of "mandatory parole" now found in Tenn. Code Ann. § 40-28-117(b) entered our law in 1974.[7]  Mandatory parole and discretionary parole coexisted until the Tennessee General Assembly enacted the Tennessee Criminal Sentencing Reform Act of 1982 which substantially rewrote our state's sentencing and parole laws.[8]  To avoid ex post facto challenges, the 1982 Act explicitly stated that it applied to "all persons who commit crimes on or after July 1, 1982."  Tenn. Code Ann. § 40-35-112(a) (1986) (repealed).  The Tennessee General Assembly purposely did not

---

[5]State agencies may decline to respond to a request for a declaratory order under Tenn. Code Ann. § 4-5-223; however, they cannot, by their silence, prevent the person seeking the declaratory order from seeking judicial relief under Tenn. Code Ann. § 4-5-225.  In accordance with Tenn. Code Ann. § 4-5-223(c), if a state agency refuses to respond to a request for a declaratory order within sixty days after it is received, its silence is deemed a denial of the request.

[6]The facts of this case differentiate it from *Debord v. Tennessee Bd. of Paroles*, No. 01A01-9702–CH-00052, 1997 WL 203600 (Tenn. Ct. App. Apr. 25, 1997) (Tenn. R. App. P. 11 application dismissed June 6, 1997) in which the prisoner was simultaneously seeking declaratory relief and a common-law writ of certiorari from the same decision by the Board.

[7]Act of Mar. 20, 1974, ch. 624, § 5, 1974 Tenn. Pub. Acts 612, 614, as amended by Act of Apr. 28, 1975, ch. 99, 1975 Tenn. Pub. Acts 177 and Act of Apr. 24, 1989, ch. 227, § 32, 1989 Tenn. Pub. Acts 326, 330.

[8]Act of Apr. 8, 1982, ch. 868, 1982 Tenn. Pub. Acts 556.

repeal the mandatory parole statute because it continued to govern the sentence and release of persons who committed crimes prior to July 1, 1982. However, in light of the fact that the sentencing and release of persons committing crimes after July 1, 1982 was governed by the Tennessee Criminal Sentencing Reform Act of 1982, persons who committed crimes after July 1, 1982 were not entitled to mandatory parole simply because the Tennessee Criminal Sentencing Reform Act of 1982 did not contain a provision for mandatory parole.

In 1989, the Tennessee General Assembly again rewrote the statutes dealing with criminal offenses and sentencing.[9] Like its 1982 counterpart, the 1989 Act again altered Tennessee's statutes governing parole. These changes, by virtue of Tenn. Code Ann. § 40-35-117(a) (1997), apply to "all persons who commit crimes on or after November 1, 1989." Prisoners with felony sentences to whom these changes apply must serve their sentences and are eligible to be considered for parole in accordance with the 1989 Act as amended. Tenn. Code Ann. § 40-35-501(a)(1) (Supp. 2000). For these prisoners, release on parole is "a privilege and not a right." Tenn. Code Ann. § 40-35-503(b) (1997), and a prisoner's release eligibility date calculated in accordance with the provisions of the 1989 Act as amended is "the earliest date an inmate convicted of a felony is eligible for parole." Tenn. Code Ann. § 4-35-501(k). Nowhere in the 1989 Act as amended is there a provision for mandatory parole.

Mr. Hickman committed all the crimes for which he is currently incarcerated after November 1, 1989. Accordingly, his sentence and his opportunity for parole are governed by the 1989 Act as amended. He is not eligible for mandatory parole because Tenn. Code Ann. § 40-28-117(b) does not apply to persons who committed crimes after July 1, 1982 and because the statutes applicable to persons who committed crimes after November 1, 1989 do not provide for mandatory parole. Therefore, the trial court correctly determined that Mr. Hickman's petition, to the extent that it sought judicial relief based on Tenn. Code Ann. § 40-28-117(b), failed to state a claim upon which relief may be granted.

## V.

We affirm the October 25, 2000 memorandum and order denying Mr. Hickman's petition and remand the case to the trial court for whatever further proceedings consistent with this opinion may be required. We tax the costs of this appeal to J.D. Hickman for which execution, if necessary, may issue. On our own motion, and in accordance with Tenn. Code Ann. § 27-1-122 (2000), Tenn. Code Ann. § 41-21-807 (1997), as amended by Act of Apr. 2, 2001, ch. 76, § 2, 2001 Tenn. Pub. Acts ___, and Tenn. Code Ann. § 41-21-816(a)(1) (1997), we find this appeal frivolous.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[9] Act of May 24, 1989, ch, 591, 1989 Tenn. Pub. Acts 1169 (codified as amended in scattered titles of the Tennessee Code Annotated).